SELLERS HOFFMAN *vs.* MINNEAPOLIS MUTUAL FIRE INSURANCE COMPANY.

### January 8, 1890.

**Fire Insurance— Construction of Policy—Apportionment of Loss.—** In the defendant's policy of insurance for $2,000 the property insured was set forth in a schedule prepared by the assured, comprising many distinct classes, and opposite each class or division had been written (by the assured) specific sums of money, the whole of which amounted to $90,000. By the terms of the policy it was to cover "one forty-fifth of the above-named sums, amounting in the aggregate to $2,000." It also provided that the company should not be liable for a greater proportion of the loss than the sum insured by this policy bore to the whole insur-

ance. The whole insurance at the time of loss amounted to $60,000. *Held*, that the defendant was liable for one-thirtieth of the loss (that being less than the insurance) upon each of the specified claims of property, (the same proportion as this insurance bears to the whole insurance,) and not merely to one forty-fifth of the loss, as claimed by defendant.

Appeal by plaintiff from an order of the district court for Hennepin county, *Rea*, J., presiding, overruling his demurrer to the answer.

*Robert Stratton* and *James A. Kellogg*, for appellant.

*Keith, Evans, Thompson & Fairchild*, for respondent.

DICKINSON, J.   This is an action upon a policy of insurance, issued by the defendant to the plaintiff, for the total sum of $2,000.   The contention is only as to the proportion of the loss for which the defendant is liable.   The following statement will present in brief the facts upon which our decision is sought by this appeal from an order overruling a demurrer to the answer:   Prior to the issuing of the policy the plaintiff, making his application for insurance, presented to the defendant a printed schedule of the property desired to be insured, this schedule containing more than 20 separate classes of property, each class or item commencing with the word "on;" and opposite each of these classes was written in figures a specific sum of money.   These sums ranged from $500 to $39,000, and were added at the bottom, the aggregate being $90,000.   The first and second of these classes, with the annexed amounts, are here given in brief, and will serve to show how the whole schedule was made up, all the others being in like form:

On stone building marked "A" on plan    -    -    -    -    $10,000
On stone building marked "B" on plan    -    -    -         5,000

Following this schedule was a description, in printed form, of the location of the property; also a clause expressing a privilege "to make other insurance, without notice until required;" and a further paragraph, with blank spaces, in which the defendant wrote the words and figures which we will distinguish by italics.   When so filled out, it read as follows:   "It is understood and agreed that the *Minneapolis Mutual Fire* Insurance Company, of *Minneapolis, Minn.*, covers, under their policy No. *12,674*, to which this specification is attached

and made a part thereof, *1-45th* part of each of the above-named sums, amounting in the aggregate to *two thousand* dollars." This paper was attached to one of the defendant's printed forms of policy, immediately following the statement of the sum ($2,000) written in the policy as the amount of the insurance, and thus became a part of the policy; there being in the policy no other description of the property insured than that contained in the instrument so affixed. The policy contains also a provision that this company shall not be liable "for a greater proportion of any loss upon property described in this policy than the sum hereby insured bears to the whole sum insured thereon." The whole insurance upon the property at the time of the loss was $60,000. The loss extended to all the classes of property named, and amounted in the aggregate to $51,000. The plaintiff seeks to recover from the defendant one-thirtieth of the loss upon each of the several classes of property named in the policy; that is, the same proportion of the loss as the amount of the defendant's insurance bears to the whole insurance, $60,000. The defendant contends that its liability is limited to one forty-fifth of the amount of the loss.

Whatever may have been the full purpose or intention involved in affixing specific sums to the several items of property insured, all of which sums aggregated $90,000, the effect of the clause in the agreement that the defendant "covers under this policy  *  *  *  1-45th part of each of the above-named sums, amounting in the aggregate to two thousand dollars," is to apportion the total insurance of two thousand dollars to these separate divisions of the property, so that one forty-fifth of the sums annexed to these divisions, respectively, shall be taken as the insurance of this company. Making the arithmetical computation thus indicated, and inserting the one forty-fifth of "each of the above-named sums" in place of those sums, and following the language of the policy, it would express the agreement of the defendant to "insure Sellers Hoffman against loss or damage by fire to the amount of two thousand dollars.

"On stone building marked 'A' on plan  -        -        -        -      $222.22
"On stone building marked 'B' on plan        -        -        -        111.11"

—And so on through the list of 21 items. The aggregate of the sums thus arrived at would be $2,000. It is obvious that such an apportionment of the whole insurance was intended to be made, and that this was not intended as a *blanket* policy, insuring the whole property, without apportionment, in the sum of $2,000.

Under the clause declaring that the defendant should not be liable for a greater proportion of any loss than the sum insured by this policy bears to the whole sum of the insurance, this company became liable for one-thirtieth of the loss upon each one of the specified classes of property, up to the extent of the sums apportioned to such classes, respectively, by the terms of this policy,— that is, its proportion of the loss is as $2,000 is to $60,000, the whole sum of the insurance; and, thus computed, the liability of the defendant would amount to the sum claimed in the complaint, $1,-700. The contention of the defendant that the amounts set opposite the several classes of property in the schedule, and aggregating $90,-000, was, in effect, an agreement that a total insurance of that amount should be maintained upon the property, and that its liability should be only in the proportion of $2,000 to $90,000, cannot be sustained. No such agreement is expressed, and there is no sufficient ground for a legal implication to that effect. Indeed, it is more reasonable to say that the policy leaves it wholly to the option of the assured to determine what amount of other insurance he would carry. "Privilege to make other insurance without notice" is given. This would certainly allow the assured to take out *more* than $90,000 of insurance, and that is inconsistent with the theory of the defendant that the agreement contemplates the specific sum of $90,000 as the total amount of the insurance. Our conclusion that the defendant is liable to the extent of one-thirtieth of the loss is in accordance with the decisions in *Illinois Mut. Ins. Co.* v. *Hoffman,* in the appellate court of Illinois, reported in 22 Chic. Leg. News, 84, and in *Hoffman* v. *Mfrs. Mut. Fire Ins. Co.,* 38 Fed. Rep. 487, both of which cases were actions by this same plaintiff to recover for this same loss, and upon policies like that now before us.

Order reversed.